**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TIMOTHY CALLAHAN : | |
| : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | NO. 02-CV-3853 |
| : | |
| B.V. THEATRICAL VENTURES, INC. : | |
| : | |
| and : | |
| : | |
| BUENA VISTA THEATRICAL : | |
| GROUP, LTD. : | |
| : | |
| Defendants. : | |

# ORDER

And now, this ___ day of _____, 2002, upon consideration of the motion of defendants B.V. Theatrical Ventures, Inc. and Buena Vista Theatrical Group, Ltd. for leave to file a reply to the Memorandum of Law of Plaintiff in Opposition to Defendants' Motion for Summary Judgment, it is hereby ORDERED that the motion is GRANTED; and

IT IS FURTHER ORDERED that the Reply Memorandum of Defendants B.V. Theatrical Ventures, Inc. and Buena Vista Theatrical Group, Ltd. in Support of their Motion for Summary Judgment, which is attached hereto, is hereby filed.

_____
Judge Eduardo C. Robreno

PHLIT\422575\1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY CALLAHAN | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 02-CV-3853 |
| B.V. THEATRICAL VENTURES, INC. | : | |
| and | : | |
| BUENA VISTA THEATRICAL GROUP, LTD. | : | |
| Defendants. | : | |

**DEFENDANTS B.V. THEATRICAL VENTURES, INC. AND BUENA
VISTA THEATRICAL GROUP, LTD.'S MOTION
FOR LEAVE TO FILE A REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants B.V. Theatrical Ventures, Inc. and Buena Vista Theatrical Group, Ltd., by and through their undersigned attorneys, hereby respectfully move this Court for leave to file a memorandum in reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.

Defendants respectfully seek leave to file a reply because the opposition brief of Plaintiff contradicts Plaintiff's admissions, mischaracterizes the Agreement between Buena Vista Theatrical Group, Ltd. and the Shubert Organization, and misstates certain caselaw.

- 2 -

WHEREFORE, Defendants respectfully request that the Court grant them leave to file a reply memorandum in this matter.


Dated:  December 12, 2002

        Nancy H. Marvel
        Attorney Identification No. 74916
        Dwayne F. Stanley
        Attorney Identification No. 86081
        DRINKER BIDDLE & REATH LLP
        One Logan Square
        18th and Cherry Streets
        Philadelphia, Pennsylvania  19103-6996

        Attorneys for Defendants
        B.V. Theatrical Ventures, Inc. and
        Buena Vista Theatrical Group, Ltd.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY CALLAHAN | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 02-CV-3853 |
| B.V. THEATRICAL VENTURES, INC. | : | |
| and | : | |
| BUENA VISTA THEATRICAL GROUP, LTD. | : | |
| Defendants. | : | |

**REPLY MEMORANDUM OF LAW OF
DEFENDANTS B.V. THEATRICAL VENTURES, INC. AND
BUENA VISTA THEATRICAL GROUP, LTD.
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants B.V. Theatrical Ventures, Inc. ("B.V. Ventures") and Buena Vista Theatrical Group, Ltd. ("Buena Vista") respectfully submit this reply memorandum of law in support of their Motion for Summary Judgment.

1. The Agreement Between Buena Vista and Shubert, and the Conduct of the Parties Under the Agreement, Clearly Establish That Buena Vista Had the Right to Control the Work Done by Timothy Callahan and the Manner of Performing It.

In his effort to avoid the conclusion that Defendant Buena Vista was Plaintiff's statutory employer under the Workers' Compensation Act, Plaintiff – who has already collected workers' compensation benefits funded by Buena Vista -- focuses on two issues relating to the Agreement between Defendant Buena Vista and Shubert. First, Plaintiff points to language in the Agreement stating that local employees are "employees" of Shubert, and second, Plaintiff argues that nowhere in the Agreement with the Forrest Theater is the right to control the work and manner of work conveyed to Buena Vista. These arguments must be dismissed.

PHLIT\422575\1

Six years ago, this Court directly addressed issues raised by the workers compensation defense and, specifically, the "borrowing employer" doctrine. The Court's decision in <u>Parker v. Marriott Corp.</u>, Civ. A. No. 93-2059, 1995 U.S. Dist. LEXIS 6261 (E.D. Pa. May 5, 1995), <u>aff'd</u>, 77 F.3d 463 (3d Cir. 1996) is highly instructive. There, this Court squarely decided that language in a contract between potential employers that refers to one party as the employer does not establish control. In <u>Parker</u>, the Plaintiff alleged that he was injured while working as a custodian at Hahnemann University Hospital when the electrical floor buffer he was operating malfunctioned. <u>Id.</u> at * 1. He claimed that his injury was caused by the negligence of Defendant Marriott, which was under contract with Hahnemann, to provide Hahnemann with housekeeping management services. <u>Id.</u> Marriott moved for summary judgment on the ground that it was acting as a borrowing employer because it controlled or held the right to control both the work Plaintiff was doing and the manner in which he was performing it. <u>Id.</u> at *2. Plaintiff argued that Marriott was not Plaintiff's borrowing employer because the contract between Hahnemann and Marriott provided that Plaintiff remained a "Hahnemann employee." <u>Id.</u> In rejecting this argument, Your Honor explained:

> This argument is easily disposed of, as the words in a contract between potential employers are not by themselves definitive on the question of control. Instead, the actual conduct of the parties to the contract is the relevant focus, and particularly, whether that conduct demonstrates which party had the right to control the work done and the manner of performing it.

<u>Id.</u> at *9. Your Honor granted Marriott's Motion for Summary Judgment having concluded that Marriott had established the elements of an employment relationship between itself and Plaintiff. <u>Id.</u> at *9.

Here, both the language in the Agreement between Buena Vista and Shubert and the actual conduct of the parties under the Agreement demonstrate that Defendant Buena Vista had

the right to control the work done by Plaintiff Timothy Callahan and the manner of performing that work. Plaintiff's contention that the contract is silent on the issue of control ignores several important aspects and provisions of the Agreement. Under the Agreement, Buena Vista was entitled to exclusive use of the Theater for the presentation of its musical stage play Disney's "Beauty and the Beast." Agreement at § 1.1 In addition, the Technical Specifications attached at Exhibit "B" to the Agreement contains very detailed requirements regarding the work to be done by stagehands on the production, such as Mr. Callahan. Agreement at Ex. "B." For example, Buena Vista's requirements regarding work performed on the production included such details as the size of the show deck, the amount of clearance required from deck and grid, the clearance required for advance load-in, the amount of clearfly space, the placement of holes for hanging motors, the length and weight of the stage trusses, and the color of clothes to be worn by stagehands. Also relevant, although not determinative of control, is the requirement under the Agreement that Buena Vista reimburse Shubert for all salaries, FICA, unemployment insurance and *workers' compensation insurance premiums,* and other actual costs relating to production labor.[1]

Moreover, the actual conduct of the Parties under the Agreement provides further compelling support for the conclusion that Buena Vista had the right to control the work done by

---

[1] Plaintiff's Memorandum states that section 16.4 of the Agreement, which provides that Buena Vista will carry certain insurance during the run of the show, does not suggest that Buena Vista was required to carry workers compensation insurance to cover injuries to Plaintiff. Section 3.4.2 of the Agreement, however, states: "In connection with such production labor, BVTG shall reimburse Shubert for all required applicable, documented and actually paid FICA, unemployment insurance and workers' compensation insurance premiums or any other actual costs relating to such labor costs as are required by any governmental agency or union agreement. . ." Agreement at § 3.4.2.

Timothy Callahan and the manner of his performance of that work.[2]  Buena Vista's Head Carpenter, Todd Frank, was present generally, and specifically at the time of the accident, to supervise the carpenters working on the production.  Plaintiff's brief recognizes that "at all relevant times, Todd Frank was employed as the head carpenter for the production."  See Plaintiff's Memorandum of Law at p. 3; Callahan Declaration at ¶ 7, and that he was responsible for telling the local union employees the tasks that needed to be performed.  See Plaintiff's Memorandum of Law at p. 5.  Plaintiff received details on the sets to prepare and the tasks to perform during the production from Todd Frank and others at Buena Vista.  Callahan Deposition at pp. 24-28.  In addition, in deposition testimony reminiscent of that offered in Parker v. Marriott, Plaintiff has unequivocally testified that Todd Frank was "the boss" and "everybody's supervisor."[3]  Callahan Deposition, p. 25, lines 6 through 9; p. 51, lines 3 through 9.  Certainly it

---

[2]     Plaintiff argues that because the Agreement between Buena Vista and Shubert is silent as to the right to control (which Buena Vista denies), testimony relating to who had the right to control the work of the local employees is inadmissible parol evidence.  This is a stunning position when one considers that, if accepted, it would require this Court to strike the affidavit submitted by Plaintiff's father, which speaks directly (albeit from a biased perch) about alleged indicia of control.  Courts, including this one, have always looked to extrinsic facts regarding the relationship and conduct of the parties to identify and assess the indicia of employment.  A contract may be an interesting point of departure, but the day to day conduct of the parties is often the source of more compelling evidence regarding the right and fact of control.  Plaintiff refers to Richardson v. Walsh Construction Company, 334 F.2d 334 (3d Cir. 1964) to suggest that extrinsic evidence is somehow incompetent.  Richardson, however, is inapplicable.  First, Richardson did not involve the question of whether the conduct of the parties under the contract was the relevant focus for determining who had the right to control the work done and the manner of performing it (as found by Your Honor in Parker, supra).  In addition, Richardson addressed testimony that it found to be in direct contradiction to the relevant terms of the contract.  The testimony in the instant case, however, does not contradict the agreement – instead, the testimony relates to conduct of the parties under the Agreement that is consistent with the Agreement.

[3]     Plaintiff cites Mathis v. United Engineers & Constructors, Inc., 554 A.2d 96 (Pa. Super. 1989) as a case where the Court found that there was a jury question as to whether the borrowing employer had the right to control the manner in which the plaintiff did his work, even where the *Plaintiff* had testified that this supervisor was "the boss."  First, Plaintiff's brief misquotes

(continued…)

is not surprising that, as the Head Carpenter present on the production, Todd Frank was the person that Plaintiff considered to be the "supervisor." The affidavit of Plaintiff's *father*, John Callahan, in which he claims to have been Plaintiff's supervisor, directly contradicts Plaintiff's own testimony. Plaintiff cannot avoid summary judgment by the submission of a self-serving affidavit designed to suggest a question of fact by way of self-impeachment. The mere fact that Plaintiff's father may have, at times, relayed to other union members the work that Todd Frank required of them, does not invest John Callahan with the authority to control the work that was done or the manner of performing it. Plaintiff seems to suggest that a union member answers only to union supervisors notwithstanding the fact that a union is not an employer, but rather a labor organization and bargaining unit. Plaintiff appears to argue implicitly that a skilled employee, or union member, could never be a borrowed employee. This argument is contrary to established caselaw. See Wilkinson v. K-Mart, 603 A.2d 659, 662-63 (Pa. Super. 1992) (rejecting argument that borrowed employee doctrine does not apply in case where employee is specially skilled, and finding borrowing employer to be statutory employer of truck driver).

---

(..continued)
Mathis. In Mathis, it was not the *Plaintiff* who testified that the borrowing employer's supervisor was "the boss" – instead, it was another non-party borrowed employee who, when asked whether the borrowing employer's supervisor was the boss, stated that he "guessed" he was. In addition, additional testimony from other non-party borrowed employees in that case established that they had disagreements with the borrowed employer's supervisor where sometimes they would prevail, and the supervisor rarely left his office. Id. at 103. In addition, the supervisor for the borrowing employer was not present at the site the day of the accident. Id. at 101-03. In contrast, in the case at bar, Mr. Frank was not only on site the day of the accident, but, moreover, he was clearly the person directing Plaintiff in testing the levitator on the day of the accident. In addition, he was present on site directing Plaintiff and Plaintiff's father on the work to be done on the production.

"Beauty and the Beast" is a Class A production that carries and is marketed under the trademark *Disney*.  While local production labor is made available to the production company, ultimate control over the stage, the set, the set pieces and the crew obviously resides with the production company.  Otherwise the quality of a touring production would vary, theater to theater, city to city, in a way that might negatively impact the presentation of the show.  Buena Vista owns and controls the sets and the set pieces that move with a road production.  It alone controls their construction, appearance, fit and function.  It alone is responsible for their utility and their safety.  It follows logically and practically that control rests with the production company, not a union or its members who move on to another show the moment the production leaves town.

Moreover, Plaintiff does not attempt to argue that someone other than the man that he considered his "supervisor" and "boss" – Todd Frank – was supervising him on the day of the accident and controlled his activities at the time of the incident.   Similarly, it was Mr. Frank, and only Mr. Frank, who asked Plaintiff to test the levitator.  Callahan Deposition, p. 28, lines 15-19; p. 38, lines 18-21.  It was Mr. Frank, and only Mr. Frank, who hooked Plaintiff up to the levitator.  Id., p. 29, lines 9 through 17; p. 38, lines 18-21.  And, it was Mr. Frank alone who worked the levitator controls.  At no time did Plaintiff seek or require guidance from anyone other than Mr. Frank in connection with the testing of the set piece as the crew prepared for a curtain that was to rise within one hour of the accident.  It is clear that Plaintiff understood Todd Frank -- as "head carpenter," "supervisor," "boss," and the one who provided his work instructions – to be the supervisor with the right to control his work on the day of the accident.  Certainly in the hours before curtain of a Broadway production, there is no genuine question where control resides.

2.  Defendant B.V. Ventures is Entitled to Summary Judgment Because Plaintiff Has Admitted that Buena Vista controlled Todd Frank and Has Not Produced Evidence that B.V. Ventures Acted, or Failed to Act, Negligently in Any Way

In his reply brief, Plaintiff does not contend that B.V. Ventures acted, or failed to act, negligently in any way. In addition, Plaintiff has conceded that Todd Frank's work was directed and controlled by Buena Vista. Plaintiff argues, however, that B.V. Ventures is liable because they were Mr. Frank's "employer." The mere fact of a nominal employment relationship, however, is not the test for vicarious liability.

As the Pennsylvania Superior Court stated in Valles v. Albert Einstein Medical Center, 758 A.2d 1238, 1244 (Pa. Super. 2000), aff'd, 805 A.2d 1232 (Pa. 2002), "not every relationship of principal and agent creates vicarious responsibility in the principal for the acts of the agent." The basic inquiry is whether such person is subject to the alleged employer's control or right to control with respect to his physical conduct in the performance of the services for which he was engaged. To be held liable, the defendant must "not only control the result of the work but has the right to direct the manner in which the work shall be accomplished."

- 8 -

Plaintiff has conceded that Buena Vista directed and controlled Todd Frank's work.  In addition, Plaintiff has not offered any evidence to show that Todd Frank's work was controlled by B.V. Ventures.  Accordingly, B.V. Ventures should be dismissed as a matter of law.

Dated:  December 12, 2002

        Nancy H. Marvel
        Attorney Identification No. 74916
        Dwayne F. Stanley
        Attorney Identification No. 86081
        DRINKER BIDDLE & REATH LLP
        One Logan Square
        18th and Cherry Streets
        Philadelphia, Pennsylvania  19103-6996

        Attorneys for Defendants
        B.V. Theatrical Ventures, Inc.
        Buena Vista Theatrical Group, Ltd.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY CALLAHAN | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 02-CV-3853 |
| B.V. THEATRICAL VENTURES, INC. | : | |
| and | : | |
| BUENA VISTA THEATRICAL GROUP, LTD. | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I, Dwayne F. Stanley, hereby certify that today I caused a true and correct copy of Defendants B.V. Theatrical Ventures, Inc. and Buena Vista Theatrical Group, Ltd.'s Motion for Leave to File a Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, and accompanying Memorandum of Law, to be served upon counsel for Plaintiff by first class mail, postage pre-paid, at the following address:

>Thomas E. Kopil. Esq.
>Timby, Haft, Kopil & Sacco
>The Barclay Building
>330 South State Street
>Newtown, PA 18940

Dated: December 12, 2002

_____
Dwayne F. Stanley

PHLIT\422575\1